J-S02019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAFIQ DIXON, | : | |
| | : | |
| Appellant. | : | No. 4046 EDA 2017 |

Appeal from the PCRA Order, November 17, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0011476-2011.

BEFORE:  GANTMAN, P.J.E., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 29, 2019**

Rafiq Dixon appeals from the order dismissing without a hearing his first petition for relief filed pursuant to the Post Conviction Relief Act.  42 Pa.C.S.A. §§9541-46.  After careful review, we vacate and remand for an evidentiary hearing.

On April 27, 2011, at approximately eight o'clock p.m., Devon Collins and Shaquil Gressom were walking past a local convenience store located at the intersection of 51st Street and Race Street in Philadelphia, Pennsylvania. Joseph Pickney, the victim, approached the two men and asked if they wanted to purchase pills.  During the exchange, a man with a shirt wrapped around the lower half of his face appeared, brandishing a gun.  Pickney, Collins, and Gressom all fled from the gunman.  The convenience store had a security camera that recorded the incident up until the men ran from the assailant.

Ultimately, Pickney sustained seven gunshot wounds and died from his injuries.

Following a police investigation, Dixon was charged with first degree murder and related offenses. At the conclusion of trial, Dixon was found guilty and ultimately sentenced to life imprisonment on July 25, 2012. On direct appeal, this Court affirmed Dixon's conviction and sentence, holding that the jury's determination that Dixon deliberately killed Pickney was supported by sufficient evidence. Our Supreme Court denied allocatur.

Dixon filed this timely *pro se* PCRA petition, after which Dixon's privately retained counsel filed several amended PCRA petitions. Ultimately, the PCRA court sent a Pa.R.Crim.P. 907 notice of intent to dismiss, and formally dismissed Dixon's petition without an evidentiary hearing on November 17, 2017. This timely appeal followed.

Dixon raises five issues for our review:

> 1. Trial counsel was ineffective for not presenting the mother of Dixon's children, Ima Francis, as an alibi witness, even though Dixon told trial counsel before trial he was with Ima Francis at the time of the shooting.
>
> 2. Trial counsel was ineffective for not presenting Dixon's mother, Sonya Dixon, as a defense witness to rebut Zelenia Lomax's testimony and the Commonwealth's claim that Dixon fled, when Dixon informed trial counsel to such prior to trial.
>
> 3. Trial counsel was ineffective for advising Dixon not to testify by informing him the Commonwealth could impeach him for Dixon's prior possession with intent to deliver conviction, when PWID is not a *crimen falsi*.

4. The cumulative prejudice from trial counsel's multiple unreasonable acts or omissions rendered Dixon's trial fundamentally unfair.

5. The PCRA court erred when it refused to grant Dixon an evidentiary hearing where Dixon, trial counsel, Ima Francis, and Sonya Dixon could have testified.

*See* Dixon's Brief at 3-4.

"Our standard of review in PCRA appeals is limited to determining whether the findings of the PCRA court are supported by the record and free from legal error. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review." *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009) (citations and quotations omitted).

Generally, "[t]he PCRA court may dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post conviction relief, and no legitimate purpose would be served by any further proceedings." *Commonwealth v. Johnson*, 139 A.3d 1257, 1273 (Pa. 2016). We will reverse the PCRA court's decision to dismiss the petition without a hearing if the petitioner demonstrates a genuine issue of material fact, which if resolved in his favor, would entitle him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. D'Amato*, 856 A.2d 806, 820 (Pa. 2004).

In his PCRA petition, Dixon asserted several claims related to ineffective assistance of counsel. To prevail on an ineffectiveness assistance of counsel

claim, a PCRA petitioner must demonstrate by a preponderance of the evidence: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. **_Commonwealth v. Sepulveda_**, 55 A.3d 1108, 1117 (Pa. 2012) (citation omitted). To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **_Commonwealth v. Cox_**, 983 A.2d 666, 678 (Pa. 2009) (citation omitted). As for the prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the case would have been different but for counsel's action or inaction. **_Commonwealth v. Dennis_**, 950 A.2d 945, 954 (Pa. 2008). Because counsel is presumed effective, a petitioner must present sufficient evidence to overcome this presumption to succeed on a claim of ineffectiveness. **_Sepulveda_**, 55 A.3d at 1117.

To establish that counsel was ineffective for failing to call a witness, Dixon must demonstrate that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. Failure to call a witness is not *per se* ineffective assistance of counsel, for such a decision implicates matters of trial strategy. It is [the appellant's] burden to demonstrate that trial counsel had no reasonable basis for declining to call [the witness].

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007) (citations omitted).

Dixon claims his trial counsel was ineffective for failure to call Ima Francis to testify. Dixon asserts her testimony would have created a reasonable probability for his acquittal. *See* Dixon's Brief at 43. Dixon claims that he informed trial counsel he did not murder Pickney and that during the time of the shooting, he was with Francis and their children at their home. According to Dixon, he instructed trial counsel to contact Francis and to present her as an alibi witness, but counsel never interviewed or attempted to interview Francis. Francis provided a signed certification as required by § 9545(d)(1). It is clear from Francis' certified statement that she was available and willing to testify for Dixon if trial counsel had called her as a witnesses. Regarding prejudice, Dixon claims the lack of Francis' testimony deprived him of a fair trial. Francis would have testified that, on the day in question, Dixon was at home with her and their two sons the entire day and night. *Id.* at 40-41.

The PCRA court concluded Dixon could not show that the absence of Francis' testimony prejudiced him based on the cold record. *See* N.T., 9/29/17, at 7. In reaching its decision not to hold an evidentiary hearing on Dixon's claim, the PCRA court relied heavily on the eyewitness testimony from Collins and Gressom, and found the evidence of record was "overwhelming" in establishing Dixon's guilt. Our review of the record indicates otherwise.

At the preliminary hearing and at trial, the Commonwealth presented Collins and Gressom to identify Dixon. However, the testimony from Collins and Gressom was riddled with inconsistencies and contradictions, and both witnesses were impeached by the prosecutor and trial counsel at the preliminary hearing and at trial. For instance, during police questioning, Collins provided a typed statement where he claimed he recognized the shooter as "Feek," which is Dixon's nickname. Collins stated that he knew of Feek from the neighborhood. He made no mention that the shooter was wearing a shirt around his face. Additionally, Collins identified Dixon as the gunman from a photo array.

At the preliminary hearing, however, Collins stated that the gunman *had* been wearing a shirt around his face, and that he ran as soon as he saw the gun. Collins repeatedly testified that he did not see where the shooter came from. On cross examination, when asked how he could identify the shooter with a shirt wrapped around his face, Collins stated that he glimpsed the shooter's face because the shirt was falling down.

At trial, Collins testimony altered again. Collins stated that he witnessed the gunman's shirt fall down around his face when he saw the gunman turn the corner. On cross-examination, trial counsel impeached Collins with his preliminary hearing testimony, where Collins repeatedly stated he did not see where the gunman had come from. Defense counsel then played the security footage showing that the shooter's shirt did not fall down. After the footage played, Collins admitted he could not see the gunman's face.

Gressom's testimony is equally inconsistent. During the police investigation, Gresssom said that he did not know the gunman. Like Collins, Gressom initially identified Dixon from a photo array and did not mention that the shooter had a shirt wrapped around his face.

At the preliminary hearing, Gressom admitted the shooter had a shirt around his face, and all he could see was the shooter's eyes. The prosecutor asked if Gressom could identify the shooter in court to which Gressom said, "not really." N.T., 10/5/11, at 13. After the prosecutor impeached Gressom with his statement to police, Gressom made an in-court identification of Dixon. Gressom additionally stated he had smoked marijuana shortly before the shooting and was high during the incident. Further, on cross examination, Gressom stated that he only signed the police statement because he wanted to go home and police told him if he did not sign the statement he would be kept at homicide. Gressom further testified that he did not pick Dixon's photo from the photo array; instead the police picked it out for him.

At trial, Gressom provided inconsistent statements as to whether the gunman's face was covered, and whether he actually saw the shooter's face.

In addition to this eyewitness testimony, the PCRA court also relied on video footage of the incident that captured the shooter. Notably, however, the court itself observed that this surveillance footage was not "absolutely clear and it didn't identify [Dixon] necessarily…" **See** N.T., 9/29/17, at 9. In

fact, the testimony was such that the trial court believed a cautionary ***Kloiber***
[1] instruction was warranted.

Other than the blurry video, the Commonwealth presented no physical evidence linking Dixon to the shooting or the crime scene (i.e. a weapon, fingerprints, clothing etc.).

Moreover, the jury ***deliberated for four days, submitted eleven questions to the court during that time, and was also temporarily deadlocked***.

Based on the questionable evidence linking Dixon to this crime, and the jury's struggle in deliberations, if the jury found the alibi witness credible, Dixon could have been acquitted. Hence, we cannot agree with the PCRA court's conclusion that the evidence of record was so overwhelming that Dixon suffered no prejudice from the absence of an alibi witness. Dixon's proffer of Francis created a genuine issue of material fact about whether counsel knew about the witness and whether he was reasonable in not calling her to testify. Thus, we believe a hearing is necessary to determine whether counsel was ineffective for failing to call Francis as an alibi witness.

We next turn to Dixon's second claim where he contends trial counsel was ineffective for failing to call Sonya Dixon, his mother, as a witness. Dixon claims his mother's testimony would have rebutted the testimony provided by

_____

[1] ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954).

the Commonwealth's motive witness, Zelenia Lomax.[2]  His mother also signed a certification as required by § 9545(d)(1), which stated she was available and willing to testify, and provided the substance of her proffered testimony. In dismissing this claim, the trial court furnished the same brief reasoning as it did regarding the failure to call Dixon's alibi witness – that the evidence of record was "overwhelming," and as such, Dixon could not establish prejudice for counsel's failure to call his mother as a witness.

At Dixon's criminal trial, the Commonwealth called Lomax, an acquaintance of Dixon's, to testify that Dixon had a motive to kill Pickney. Lomax testified that Pickney sold Dixon a defective cell phone, and as a result Dixon and his friends "jumped" Pickney.  According to Lomax, Dixon told her that Pickney "pulled a gun on my mom" and indicated he was going to kill Pickney.  N.T., 7/18/12, at 16.  During this alleged conversation, Lomax claimed she tried to defuse the situation, by offering Dixon $100 to replace the cell phone, but he refused.  *Id.*

Dixon wanted his mother to rebut Lomax's testimony.  He claims his mother would have testified that the alleged confrontation where Pickney pulled a gun on her never occurred, and that she did not even know of an individual by the name of Joseph Pickney.  She also would have testified that

_____

[2] We note that Dixon alleges that he informed trial counsel that Lomax's testimony was entirely false.  Like the situation with Francis, he contends that he instructed trial counsel to interview or attempt to interview his mother, and trial counsel failed to do so.  Dixon's Brief at 48.

prior to Dixon's arrest, she was not on speaking terms with him for six months. As such, she did not have a conversation with him about Pickney.

The Commonwealth contends that testimony from Dixon's mother would have been irrelevant because it "would *not* have directly contradicted [Lomax's] testimony" and therefore, the PCRA court did not err in refusing to conduct an evidentiary hearing. Commonwealth's Brief at 10 (emphasis in original). The Commonwealth points out that according to Lomax, **Dixon** told her that Pickney pulled a gun on his mother. In other words, even if his mother testified that no confrontation between her and Pickney ever occurred, that does not rebut Dixon's telling Lomax that such a confrontation did occur.

A PCRA petitioner cannot succeed on a claim of ineffectiveness for failure to call a witness if the proposed witnesses' testimony **would not have materially aided him**. **See Commonwealth v. Baumhammers**, 92 A.3d 708, 725 (Pa. 2014). However, there is no requirement that the proposed testimony directly contradict other previous testimony in order to be materially helpful.

Here, Dixon claims his mother's testimony would have benefited him because it casts doubt on whether Dixon had a motive to shoot Pickney. If the jury believed his mother's testimony, it may have weighed the credibility of all the witnesses and other evidence differently, especially since it appears the jury struggled to reach its verdict. Dixon's proffer of this witness creates

a question of fact regarding counsel's ineffectiveness. As such, an evidentiary hearing is warranted on this claim.[3]

Next, Dixon claims his trial counsel was ineffective for advising him not to testify.

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

**Commonwealth v. Nieves**, 746 A.2d 1102, 1104 (Pa. 2000) (citations omitted).

Dixon asserts that he did not testify because trial counsel advised him that he could be impeached because of a past possession with intent to deliver conviction ("PWID"). Dixon argues that this advice was unreasonable because

---

[3] Whether trial counsel knew or should have known about Ima Francis and Sonya Dixon, and why counsel failed to call them as witnesses, are issues that the PCRA court, in the first instance, must confront after it holds an evidentiary hearing. **See Commonwealth v. Hughes**, 865 A.2d 761, 799 (Pa. 2004) (holding that without an evidentiary hearing "we cannot discern whether a reasonable basis existed for counsel's omission. In such circumstances, this Court has declined to divine, in the first instance on appellate review, whether counsel's actions were reasonably based"). Here, the PCRA court abstained from concluding whether trial counsel knew about the alibi and fact witnesses. The court stated that it did not know whether trial counsel had been informed of the testimony Ima Francis and Sonya Dixon were willing to provide. Instead, the PCRA court disposed of Dixon's petition because it concluded Dixon was not prejudiced by the absence of the witnesses' testimony.

- 11 -

this was his sole conviction and it was not *crimen falsi* (i.e. a crime involving his honesty).

Both the PCRA court and the Commonwealth state that Dixon was fully colloquied as to whether he wanted to testify. The issue, however, is not whether Dixon was colloquied. The issue is whether Dixon knowingly and intelligently waived his right to testify when this colloquy took place. He claims such waiver was not knowing and intelligent because he believed that he could be impeached for a prior PWID conviction, based on trial counsel's advice.

The PCRA court supported its dismissal of this claim by assuming facts about trial counsel. The court stated that trial counsel had been trying cases for "probably over forty years." N.T., 9/29/17, at 12. Therefore, it concluded, that because of counsel's experience, "it strains credulity to ask this [c]ourt to believe that [trial counsel] would ever have said a PWID conviction can be used against [Dixon] because . . . [trial counsel] is a seasoned attorney." ***Id***. at 12-13. This conclusion is not grounded in any fact finding process or supported by the record. While we must accord the PCRA deference for its finding of fact, we are under no obligation to accord it deference to scenarios it only assumes to be true.

The Commonwealth contends that, even assuming the advice was given, trial counsel was reasonable in advising Dixon not to testify. The Commonwealth argues that a defendant may be impeached with prior records that do not involve crimes of fraud or dishonesty in certain circumstances. ***See Commonwealth v. Murphy***, 182 A.3d 1002, 1007-09 (Pa. Super. 2018)

(prosecutor could cross-examine defendant regarding his prior drug possession convictions, even though they were not *crimen falsi*, where he "opened the door" to the evidence by testifying he had never used drugs). The Commonwealth claims that it was likely that trial counsel feared "that [Dixon] might say something on the stand that would open the door to his being impeached with his prior drug-dealing conviction." Commonwealth's Brief at 23. While such a scenario is possible, it is also nothing more than speculation. Nothing in the record supports this theory. As such, an evidentiary hearing is necessary to determine whether trial counsel instructed Dixon as alleged, and if so, whether this advice was reasonable.

In his fourth issue, Dixon argues that he is entitled to relief based upon that cumulative prejudicial effect of all of his allegations of error. However, "no number of failed claims may collectively warrant relief if they fail to do so individually." **Johnson**, 139 A.3d at 1287. Here, we have not determined that trial counsel was ineffective. Accordingly, Dixon is not entitled to a cumulative assessment of prejudice at this time. **See id**. at 1288.

In his final argument, Dixon requests an evidentiary hearing on his claims of ineffectiveness. As we explained above, an evidentiary hearing is necessary to determine whether any of Dixon's claims have merit. Therefore, we vacate the order below and remand to the PCRA court for proceedings consistent with this opinion.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/19